4303 Citibank, N.A. 4346 I am here, yes it is Kurtzberg, I appear to be unable to turn on my video, however I'm getting a message that the host has stopped it. Or maybe we'll fix that, there you are. You can see us. Yes I can your honor, yes, thank you. Alright, so Mr. Citron, you have three minutes to model, so I guess seven minutes to start. It pleases the court, my name is Eric Citron, I represent appellant FLH. There are two issues that the court could reach and resolve in this case in favor of FLH that would require reversal. One of them is this big and interesting question whether there is or should be some kind of nullity doctrine in this circuit that prohibits fixing certain kinds of jurisdictional issues in the original pleading of a complaint. But before the court gets to that question, I think it can and probably should decide this case on the narrower ground that none of the problems with the filing of this complaint are actually properly understood as jurisdictional problems. That's not to say there weren't problems. The suit names Frontpoint and Santerra, the suit by FLH names Frontpoint and Santerra as the original plaintiffs, even though FLH is holding assignments of those claims and a power of attorney, and Rule 17 required FLH to have pled in its own name. But Rule 17 also tells us how that problem is to be solved. The court may not dismiss the action until it gives FLH the opportunity to step in for Frontpoint and Santerra, ratify or join the lawsuit. Can you help me understand the history of that a little bit? I know your reply brief talks about how it was just a good faith mistake, but it's puzzling to me why it took, looks like over two years and a couple amendments to fix that, if that's all it was. So I think the issue is just that we thought that it ought to be initiated in the names of the originally injured plaintiffs because we had assignments and irrevocable powers of attorney from them. And then no one raised any issue of their corporate capacity or their legal existence at any point prior to the third amended complaint. And since Rule 9 says that we don't have any obligation to plead either their legal existence or their corporate capacity, we didn't really think of this as an issue that had any valence. And in fact, it doesn't have any valence. It doesn't matter to anyone whether or not you name the case FLH versus, instead of Frontpoint versus, the assignee is going to be bound by the judgment in any event as a privity. And so we just didn't think that it mattered. But as soon as we were amending the complaint and knew that these firms had been dissolved, we did amend the allegations so that they were correct. So there's no dispute that Frontpoint and Sunterra did not have standing because they were, they had been dissolved years before, is that right? It depends what you mean by standing. But we certainly do think that they were- No, I think that they would have, we don't think that that's an Article III standing issue, their dissolution. And we know that that's not- I guess, okay, so let me ask the question. Does a dissolved corporation have Article III standing to sue? It can, yes. And we know that because it's quite possible under state law for a corporation to have been dissolved but retain capacity to sue and be sued. And federal courts adjudicate those cases all the time. In fact, the bankruptcy laws permit the federal courts to hear cases respecting corporations that have been dissolved in order to vindicate the purposes of the code. Can I interrupt a minute? That sounds like a situation that's too, well, is it really dead then? It's like the Princess Bride, it's not totally dead, it's only merely dead. Under a lot of state law, a dissolved corporation is not totally dead, it's only merely dead. But it sounds like in the canons, you're totally dead when you're dissolved. Is that right? Well, it depends what you mean by dead. I think the point is, I mean, we certainly weren't allowed to carry on the lawsuit, right? We're not saying we had capacity or legal existence. The point I'm trying to make, I think, is that legal existence itself doesn't have any jurisdictional valence, right? It is possible to have capacity to sue and to appear as a plaintiff even though you don't legally exist for other purposes, and it is possible to legally exist for other purposes while you lack capacity to sue. Neither of those are jurisdictional, and I don't think one plus one equals three. I don't think you can take these two issues, mush them together, and create a jurisdictional issue out of them. We couldn't carry on the lawsuit, and we needed to substitute in the appropriate successor in interest, and here it is, FLH, as assignee of those claims. But, you know, the question whether or not you can sue in the corporate form is really just a question about whether the underlying human beings are allowed to use a corporation to bring the lawsuit or whether they need to sue as, you know, partners or shareholders or the like. And if you look at, I want to look at both Rule 9 and Rule 17 in this regard. Rule 9 is entitled capacity, authority, legal existence, and it treats all three of those things exactly the same, which is to say as not necessarily jurisdictional. So I don't think there's any way to accept the defendant's argument that legal existence is necessarily jurisdictional without thinking that the rule was, you know, simply wrongly drafted by the Rules Committee, Congress, and the Supreme Court. And then Rule 17 permits federal courts to essentially create jurisdictions, corporations that don't exist under state law for purposes of vindicating a federal right out of a partnership or other, you know, loosely affiliated set of individuals. The, again, this is just a prudential question about whether a corporate entity is an appropriate way of vindicating the underlying rights. And that question isn't properly a jurisdictional question because the court has, this is Judge over which the court properly has jurisdiction. The issue here is who are the right plaintiffs to be bringing this claim? Is it the corporation? Is it maybe the underlying interests in the corporation? As in the E.R. Squibb case, you know, should you be using the names for Lloyd's instead of Lloyd's itself? Or should you be using the assignee in a case involving assignment? And the correct answer under Rule 17 is you should have named the real party in interest, the assignee here, but that is a rules issue. And the fact that it's a rules issue has two really important consequences. One is as soon as we acknowledge that this is an issue of the rules, we can at least recognize that the settlements that were already entered respecting two defendants should properly be entertained by the district court because those defendants willingly gave up any kind of rules defense. The only issue that could possibly interfere there is a jurisdictional one. But also once we recognize that there's no constitutional issue here, that this is just an issue of the rules, the plain text of Rule 17 governs here. It says an action may not be dismissed for failure to name the real party in interest until you give the party the opportunity to join. And if you give FLH the opportunity to join this case, all the problems go away. FLH is the- Can I ask you about the Rule 17 substitution issue? It seems like it's not just a situation where you're, you know, you got the wrong entity and you're replacing another one. The court actually had to look into this APA to see whether the rights had been properly assigned. And that seems to start to get into some merits issues. So what's your support for Rule 17 applying in a situation like that? Well, I think Rule 17 is always going to involve the- to the extent Rule 17 involves an assignment and to the extent the defendants want to argue that no assignment occurred, you're always going to have this, you know, issue of whether or not- which you described as a merits issue. I don't think that is a merits issue. It's just subsidiary to the decision of this non-merits question whether or not the party claiming to be the real party in interest actually is the real party in interest. And just on the assignment, I want to make one really important point. The terms of the assignments from Frontpoint and Sonterra are different. This- the issue that the district court resolved about securities class actions just does- that language just does not appear in the Sonterra assignment. So I don't think the defendants are actually contesting whether the Sonterra assignment is broad enough. And so for that reason, you know, if this is decided, as we explained in our brief, if you recognize that this is not a jurisdictional issue, Sonterra's claims were not dismissed on jurisdictional grounds and there'd be no problem. Substituting FLH for Sonterra. Could I just ask you, just as a basic principle, could you articulate what your proposed holding would be on the Article 3? How would you succinctly sum up what you would like us to hold if we were to agree with you? Right. I would hold that the three problems that they have purported to identify with the plaintiffs are not jurisdictional problems. That the lack of capacity or corporate existence does not create a jurisdictional bar, although the court needs to find a proper plaintiff- a proper plaintiff needs to be named. And that for the reasons Judge Sullivan gave in QS Holdco, that the assignment is also not a jurisdictional issue. And so this question- this case is just governed by the plain terms of Rule 17. And maybe, I guess, then I guess to rephrase what I think I actually wanted to ask was how would you affirmatively state, under your theory of the case, why there is Article 3 standing here? Not why there are jurisdictional impediments, but why do you say that notwithstanding the that these two corporations were dissolved, that there is standing? Not that there might theoretically be standing. One need not categorically say there is never standing where a corporation is dissolved. But why is there standing with these corporations? Because presumably some dissolved corporations don't have standing. I think that it depends, again, it depends if you're talking about prudential standing or Article 3 standing. I'm only talking about Article 3. Why do you propose that these two do have Article 3 standing, notwithstanding the fact that they were dissolved? So I think as a theoretical matter, it's got to be for the exact same reason that QS Holdco gives for why the assignor continues to have Article 3 standing, notwithstanding that they have no interest in the actual corporations. That one, I wasn't all that convinced about that, because isn't that just a contractual beef between the assignor and the assignee? The assignor comes, of course, he's got Article 3 standing. He's going to collect the money. The assignee doesn't like that. He's going to come and beat him over the head with a lawsuit and say, give me the money. But that's just a contractual beef between the two of them, right? And that doesn't mean that I don't have standing just because I have a contract to say, well, no, no, I'm giving you my rights. I go out and I collect my own rights. Well, someone's going to say, wait a minute, you owe that to me. But I still am here, right? I still have an injury. I'm going to sue. I'm the assignor. That seems to me a different situation from saying I got them from somebody who's dead or I got them from a corporation that no longer exists. And we are downstream a year, two years, 100 years. And now I am still filing a lawsuit on behalf of this dissolved corporation or dead person. Why is it that taking apart, putting aside that analogy where you have a corporate remedy that doesn't take away the assignor's capacity or standing, why is it still true here? So the named party in this circumstance, like the named party in the assignment case, they have injury in fact, right? They were actually injured by the defendant's conduct. They also have causation, right? It's the defendant's behavior that causes it. So the only possible objection is on the redressability prong. And I think as Judge Sullivan's opinion in Holdco correctly says, as Cran Park, which is the Sixth Circuit case correctly identifies, the redressability requirement is about whether this is the kind of injury that can be properly redressed with the judicial power, not whether this plaintiff is going to get the money at the end of the day. Isn't that just another way of saying that? I read most of those cases as saying, well, it's just the fact that the plaintiff may have to give away the money almost to a certainty to somebody else, doesn't take away the fact that they're going to be able to get the money. I mean, who knows, right? Maybe the assignee says, you know what? You're a nice guy. I leave you with the money. So what? I walk away from it. If the lawsuit puts money into the hands of a plaintiff, there's always a theoretical contingency that maybe they don't have to pay it over to somebody. So that's what I'm saying. What happens when you don't exist anymore? And again, I'm using the analogy, which you argue is arguably a faulty one, or maybe it's a correct one. If I'm dead, money is going to do me no good. That's the one thing you know for sure. It's going to do me, personally, no good. Why isn't that true for Santerra or Portland? From a point of view, for just the reason you gave at the end, I think this is where the analogy between a dead person and a dissolved corporation breaks down. Because in just the way that an assignment or contract might pass the proceeds from a corporate lawsuit from one corporation to another corporation, the dissolution of a corporation, what happens to that corporation if it's a party to a lawsuit, is just a question of underlying state or corporate law or the organization of the corporation. And the corporation is just being named in the place of human beings who could conceivably carry on the lawsuit. So the fact that it's dissolved is really just a question about whether it's appropriate or not to use the corporate form to vindicate the lawsuit. It's about the power of the people who are trying to bring the lawsuit, rather than the power of the court to adjudicate it. So it's not like the money is going nowhere, right? The money is going to go to the person who properly gets the money when it's given to Santerra after its dissolution. Here, it's an assignee. So it's very easy. But if it were a question of corporate law, it could be distributed out. If a person dies, that's more complicated. Because as you say, the money can't really go to the dead person. Now, in our view, it could go to the estate. And that would be the right way of taking care of it, which is why we don't think that even the human being cases, we think the 10th Circuit has the better of that argument. But in the case of a dissolved corporation, we just know this issue is non-jurisdictional. And this actually, a really good way to see that is to imagine the cases where state law grants capacity, but not existence after dissolution, right? There's going to have to be some rule for either satisfying a judgment against the corporation if it's sued after it's dissolved, or for distributing out the proceeds of a litigation after dissolution, right? Could be under the bankruptcy laws if it's already been dissolved and it still has capacity to sue, right? And so it really can get the money and do something with it. And that's, I think, what makes dissolved or dead corporations very different from dead human beings. All right, let's pause there. We've gone over, but it's always easier to give time than to take it away. So we'll now hear from Mr. Kurtzberg. You've reserved three minutes, Mr. Citron. Mr. Kurtzberg? May it please the Court, Joel Kurtzberg, on behalf of the Credit Suisse Appellees, and speaking on behalf of all the appellees. Your Honor, the district court opinion should be affirmed because it is now undisputed at this argument that no named plaintiff existed at the time that the plaintiff filed the suit. And that does raise an Article III standing issue. That's not really what the district court relied on, right? Well, I believe the district court is ruling. It seems to me you're making a different argument now that sounds like you're in the Sixth Circuit. I don't think that that's true. I do read the district court opinion as drawing upon Article III standing. It talks about subject matter jurisdiction, and it does rely on the fact that this corporation had no capacity to sue. The reality is, and I think it's really important to drill down on the facts of this case. This corporation did not just have no capacity to sue. It's actually a corporation and a limited partnership. They had no capacity to do anything. I would point your honors to the affidavit of our Cayman law expert that was undisputed in the record, which appears in the joint appendix at pages 385 to 393. According to that affidavit, the entities in question, quote, no longer had any legal personality, and, quote, could not take any lawful action. Could not take any lawful action. That means that they could not instruct their counsel to do anything. They could not set up a bank account. They could not receive funds. They could not monitor litigation. We got it. We got it. But the fact that they can't just, it's not just that they're dissolved, which my opponent seems to be equating dissolution with existence. Those aren't the same thing. This company could not do anything, and under US Supreme Court precedent, it's clear that if there is a non-existent entity at the helm of the litigation, there can't be article freestanding. It's not just a Rule 17 issue. I point to several Supreme Court decisions. The first is Baker v. Carr, in which the Supreme Court, it's a 1962 case that was quoted in the Fourth Circuit's decision in the House. It's 369 U.S. 186. There, the Supreme Court described the gist of the question of standing, and they use the following quote. It's whether the parties alleged such a personal stake in the outcome of the controversy as to ensure that concrete adverseness, which sharpens the presentation of issues on which the court so largely depends for elimination of difficult questions. The gist of the question is whether there is a personal stake in the outcome of the controversy to allow for that kind of adversity. And I just ask you a more general question, just so we can hopefully maybe narrow the issues. Are you taking the general position that anytime a corporation has been dissolved, there is no article freestanding for it to serve as a plaintiff? No, Your Honor. We are not taking that position. Okay, so are you taking the narrower issue that these two particular companies, and this is what I think I was hearing you say, don't they lack standing given the particular circumstances here, which is that they were dissolved and could take no legal action? Correct, Your Honor. So this may circle around to something that Judge Sullivan was alluding to earlier. Is this question of standing, in your view, resolved by reference to Cayman law? What their actual powers are under Cayman law, under the law of incorporation? Yes, Your Honor. I believe that it is resolved by Cayman law. And is that in the record? Do we have findings in the record about what Cayman law is? I believe that there is support in the record. The Cayman law affidavit that I referred, Your Honor, to is undisputed. And I believe that the district court found that there was no capacity to sue. He did not cite to the Cayman law affidavit, but it was completely undisputed. I'm sorry, where is this in the record? The Cayman law affidavit is of John Michael Harris, joint appendix pages 385 to 93. I would point your attention particularly to paragraph 24 of that affidavit. Paragraph 24 makes clear that these entities no longer had any legal personality and cannot take any lawful action. While the district court didn't cite to that, it's clear that that is what it had to be relying on for its view that they didn't have any capacity to sue. And therefore, no subject matter jurisdiction, no Article III standing. Here, these entities weren't just dissolved with the power to still wind down operations or the power to bring certain kinds of lawsuits. They could not do anything. And it is impossible. The Supreme Court has made clear that it is impossible to have a case for controversy under those circumstances. I would point your honors to- Can I ask you to address strength? Because it seems to me that this runs counter to your principle arguments here. The focus is on the injury being addressed, not on what the plaintiff actually gets. In Sprint, the court simply held that the fact that the person receiving the money may not keep the money does not undo Article III standing. There, there was no question that the plaintiffs before the court existed. They had the ability to take that money. They had the ability to transfer that money. They had the ability to direct their counsel and oversee the litigation. This is different. And the Supreme Court makes clear that it's different. The next case I'd cite is Ellis v. Dyson, which is a 1975 Supreme Court. There, the court expressed grave reservations about the existence of a case or controversy in what was a constitutional challenge to a loitering ordinance. And the basis for the court's concerns, those grave reservations, was that the plaintiff's counsel had, quote, not been in touch with their clients for approximately a year and were unaware of their clients' whereabouts and hadn't even kept their clients apprised of the progress of the suit. And the court said, unless the plaintiffs are found by the time we send this back to the district court, which is what the court did in that case, it is highly doubtful that a case or controversy could exist. And then this is the quote that I think is really essential. It is elemental that there must be parties before there is a case or controversy. There is no way for a nonexistent entity that cannot take any action at all that is lawful to satisfy that requirement. If there are no parties, there cannot be a case or controversy. The dissolved plaintiffs here, it's not just that they're dissolved, could not satisfy that. If there are grave doubts about a party who's been out of touch with counsel for a year, giving rise to Article III standing, it is impossible. So if that's right, counsel, then did the district court error by considering whether the APA had transferred assigned rights to FLH? I don't believe that the court erred. I believe that the case could have been decided without looking at that question. Simply because it's conceded that the entities did not exist. But it is an alternative ground for the ruling that even if there were some reason to believe that there were Article III standing, that the assignment here did not flow to FLH. So there's no question for a separate reason that FLH does not have Article III standing. Well, if there's no Article III standing, then I don't understand how the district court could have entertained that inquiry at all. I agree that, Your Honor, the case could be decided without looking at that separate question. And the case could be decided once we know that this is an entity that does not exist and can take no lawful action. There's no one at the helm of the litigation. They can't accept- Did the district court error by allowing FLH to amend the complaint? I do believe that the district court did error and acknowledged its error in saying that it allowed FLH to amend the complaint and that it had no power to do that because it did not have subject matter jurisdiction in the beginning. So I believe that it acknowledged that that was an error in its final decision. So, yes. I don't know what happened there. And, Your Honors, it's not only Supreme Court case law that talks about there being a need for a continuing interest and the need for there have to be parties to be a case or controversy. Every court of appeals that has addressed this question, namely, whether there is Article III standing over an entity, either a natural person that doesn't exist, that's dead, or that there's no existence, has ruled that there is no Article III standing. We have the Fourth Circuit decision, unpublished, but very, very persuasive reasoning in-house that explained that in this situation, there are two problems. One is Article III standing and one is a Rule 17 problem. And the reality is the non-existence of a plaintiff raises an Article III problem. Let me ask you a hypothetical. Sure. So if an individual who has a claim dies, the lawyer, unaware of that fact, files the suit in the decedent's name. You're saying that that's a nullity. There's no real party, and so, therefore, that's a nullity. And so if the estate now wants to swap in under Rule 17, they can't. That's what you're saying, right? I am saying that, Your Honor, with one caveat. It depends on whether or not the law in that circumstance provides that the claim somehow survives. But if it's filed in the name of the dead person, yes, I am saying the estate can't substitute in. The estate has to be the one to bring the action. This seems like a not historical application of Article III standing. And so, I mean, when did this become the law? I'm sorry to hear what you said. I believe, Your Honor, that the Supreme Court cases that I've cited have made clear that there needs to be a plaintiff where there to be a case for controversy. There needs to be a party with an ongoing interest that can oversee the litigation. That case law has been around since the 70s. And I believe that there is also, there are numerous courts of appeal that have also held, as I've just said. But wait, there clearly is a party who's been running this litigation from the beginning. They filed it. They are making the decisions. You're saying that they're the wrong party. They didn't announce themselves. If they had announced themselves at the beginning, you would have had no problem, right? I don't believe that it's true that there was a party that was running this litigation from the beginning. It's very hard to reconcile how the original complaint, the first amended complaint, both of them did not say that the entities were investment companies. They actually falsely alleged that they still existed. They used the present tense. It was not until the second amended complaint. And by the way, they also don't mention an assignment. They don't mention FLH. They don't mention anything. They just say, we are existing investment companies. It wasn't until the second amended complaint that they just tweaked the word. That it is an investment company to was an investment company. Still not naming FLH. Still not referencing an assignment. Nothing in there other than that. What's the advantage that you're sort of suggesting that they got from doing that? I don't really understand the import. I'm not sure what the advantage is of that situation. But I don't think that it is clear that there was a party at the helm from the beginning of this case. The claim that it's been FLH all along is simply not true. And it's not how courts analyze who has appeared before them. FLH not only isn't the party that is named. There is no reference to an assignment. There is no allusion to the fact that these companies don't own the claim. There is absolutely nothing that would suggest that there was anyone other than Sunterra and Frontpoint bringing these claims until the second amended complaint is filed. Can I ask you this question about... I'm still interested in the question of state law and what, if any, significance it has in terms of Article III standing. Let's say the state of, I don't know, Iowa, announces a matter of substantive law that suits may be brought in the name of deceased persons. You need not file in the name of an executor or person representative of an estate. But you may... Basically, a dead person has capacity to sue. And let's say for five years. Let's say it's something reasonable like that. If that person who died brought a diversity suit in federal court, would you argue there's no Article III standing? I think that's a more difficult question in this case, Your Honor. Yeah, so what's the answer? I think that it would depend. So it would depend. I know, I made it hard. I think... No, of course, Your Honor. Yes or no. Can states construct Article III standing by granting capacity to sue? I think if a state constructed there to be a guardian or someone appointed... Nope. Nope. They just say dead people have capacity to sue. That's all they say. Dead people have a capacity to sue. I think that would be problematic, Your Honor, from an Article III standpoint, because the United States Supreme Court case law makes clear there actually needs to be a plaintiff. There needs to be someone who is overseeing a steward over the litigation. You have to have someone there to create, to feed the adversarial process. You can't have lawyers just filing papers without clients approving them. There needs to be a party. And so... So let's proceed to my second hypothetical. Then I assume that your position is different when state law says after a corporation is dissolved, it still may sue or be sued. What's the difference? I think that we shouldn't get into metaphysical debates about whether... Just answer that question. Forget about the metaphysics. If a corporation is dissolved, but is still capable and has capacity to sue, then I believe that that corporation is still authorized to exist in direct litigation. So that is a different case than this case. Then how do you get into the question then? How do you reconcile that? Because I'm trying to sort this out in my mind. How do you reconcile that position with what seems to be said law, that capacity to sue is an affirmative defense and is not an impediment to Article 3 standing? Basically, if states can announce that dissolved corporations are really alive, they can sort of do it. They can have a Frankenstein law, if you want to call it. They may be dissolved, but they can still sue and be sued. Why couldn't they say that about people? And if they could say it about people or corporations, then why aren't we really just talking with a capacity issue, which is an affirmative defense and not an Article 3 standing? That's what I'm trying to figure out. I understand the question, Your Honor. I believe that, first of all, this is an easy case compared to that one, because this corporation and these entities had no ability to take any lawful action whatsoever. But if there were an entity that was authorized to take certain actions, then it would depend on what those actions were. Corporations can have existence outside of capacity to sue. They may still be able to take certain types of actions, even if they can't bring a lawsuit. And it might be a more difficult question as to whether there is Article 3 standing if you had a corporation that, by state law, were authorized to do certain things but not bring this kind of lawsuit. And those statutes exist. There are state statutes that say you're allowed to bring certain kinds of litigation after you dissolve. It has to be related to winding down the company, but you can't bring other kinds of litigation. So it's not necessarily just a capacity-to-sue question. Here, what makes this a clear-cut case is there's not just a lack of capacity to sue. There's a lack of capacity to do anything. So there's no one at the helm of the ship. There is no one to direct counsel to do anything. They can't accept funds. Mr. Kurtzberg, because, I mean, what you really are saying, then, is that FLH is not the real party in interest. And that's—Rule 17 covers that. But Rule 17 allows a real party in interest back into the case, even if the original party in interest or the named party is not existent anymore, right? No, Your Honor. If there is a non-existent party in Bailey, these are people who come in after the termination of the—go ahead. If there is a non-existent party that is not there at all from the outset, the case is a nullity. FLH, I do think FLH does not have even capacity to sue or standing or anything, because I don't think the assignments do what Mr. Citron claims they do. And by the way, we do contest the assignment to Santera, who we also think is not properly before this court. But the reality is, when there is an entity that has no ability to do anything, as is the case here, it is an easy case. If the Supreme Court says no case or controversy when you're not in touch with your client for a year, how could there be a case of controversy when you could never be in touch with your client? Who reviewed the original complaint? It's because there's an actual real party in interest. That's the point. If it's just lawyers bringing suits, that's a different problem. That's a Rule 17 problem, it seems to me. But I think you're saying that—I mean, you're adopting the Sixth Circuit view that if there's a mistake in naming the party at the outset, that can't be fixed by Rule 17. That's what you're saying, right? Your Honor, I think that—I'm not saying that. First, let me be clear. I am saying, first, that the Fourth Circuit's way of looking at this, which breaks things out into there being two separate problems, is useful. One is an Article III problem. The other is a lack of capacity to sue. So I want to be clear. I am not saying this is just a Rule 17 issue. It raises an Article III question. If there is some sort of clerical error, that would also be a much more difficult case than this one because there have been a number of cases historically where courts have treated clerical mistakes very differently. You know, somebody got the name of the corporation wrong. That is not necessarily something that is just a clerical error. That might present a different issue as to whether or not a court could correct that error and there be Article III standing. Here, this case was filed. It was refiled and filed again by entities that have no ability to take any action. And that is an Article III question. It can't be corrected by the rules of federal civil procedure. Rule 17 doesn't apply. This court has repeatedly made clear in DeKalb, for example, that you cannot fix something if there's no one who has standing at the beginning of the case. There's language that has repeatedly suggested that. And it's very clear from U.S. Supreme Court case law and the federal rules themselves that the rules can't expand the jurisdiction of this court. Because there is more than one problem, a lack of capacity and an Article III problem, then that is why it can't be corrected, Your Honor. All right. Well, let's end it there. We've gone well over, but it's interesting and useful. So we'll now go back to Mr. Citron, who's got three minutes of revolve. Sure. I'd like to make one or two very quick points about why I don't think the underlying issues are jurisdictional. And then I'd at least like to touch on the second issue, which is whether if there is a jurisdictional issue at the outset, there's some problem with correcting it, which, you know, we've assumed, but I don't think it's correct. You know, Mr. Kurtzberg very correctly emphasized that they have defenses based on what the powers of this corporation are. Does the corporation have the power to bring the lawsuit, to distribute money, to do anything? But questions about the powers of the corporation are questions about the corporation and not the powers of the courts. Right. This is the exact distinction, again, correctly made in QS HOLTCO, between the power of the plaintiff to bring the suit or administer it and the power of the courts to hear it. And that's also true of the point that this is all resolved as a matter of Cayman law. If it's a Cayman law question, it's not an Article III question, right? It's just about what powers are given to the corporate form as a matter of state law. And just further to that, and I think this pivots us usefully into the second point, Judge Nardini's question about whether or not you could have the Iowa pleading rule that you can plead in the name of a dead person, I think correctly reveals that this isn't a constitutional issue. It's just a pleading rule question. How do the relevant rules want you to plead the case? And when you break a pleading rule, that's bad. You're not supposed to break the pleading rules. But the rules also tell you how to fix that. And the rules say that if you plead in the name of the wrong party, but it is a claim over which the court otherwise has jurisdiction, that you can, in fact, change your pleadings or fix them so that the jurisdiction is correctly noted. And the way we know for certain that you cannot have this rule that the defendants are pushing, where there's a jurisdictional problem and you can't cure it, is Connolly, which was decided by the Marshall Court, which involved a case that was brought in the diversity jurisdiction and did not involve diversity, was outside the subject matter jurisdiction of the court. And the court says you can drop a party to create diversity, and it will be retrospective to the filing of the complaint. That rule is nonsense under the defendant's rule that when there was never jurisdiction at the outset, there's no way to amend a pleading. The court doesn't have jurisdiction to entertain that motion. We need to distinguish between what the Constitution cares about, which is exercising the judicial power to decide the merits of cases, and just courts administering their dockets, which is not a constitutional issue. Courts can take jurisdiction over cases, limited jurisdiction over cases to serve process, to allow amendments to pleadings, to stay actions without regard to whether or not they have subject matter jurisdiction. They do it all the time, right? What they cannot do, what the Constitution prohibits is exercising the judicial power in such a case, which involves deciding the merits. In fact, you can decide on non-merits grounds, cases in which you have no subject matter jurisdiction. So the major premise of this is all deeply flawed, which is that you can't correct a jurisdictional issue, even if one existed. But I think the easier way to decide this case, the one with less stakes, is just to recognize that these disputes about what powers this corporation had at the time that it was named aren't about the jurisdiction of the court. And as long as FLH is there, as long as it was the real party in interest, Rule 17 tells us what to do. Now, the suggestion that FLH was not really there, this is all a sham or something, I mean, we're very happy to litigate that issue in the district court. There's absolutely nothing to suggest that that was true. I will represent you, the trial court lawyers would represent you that FLH was always the underlying client. Individuals from FLH will also testify that they authorized the lawsuit and wanted it brought in the names of the parties who had given the power of attorney and that they didn't know at the time that they had been dissolved. This is just the exact kind of mistake that Judge Sullivan is referencing. It's like filing a complaint in the name of somebody you don't know is dead and then saying, oh, well, you can't substitute in the estate properly because of a pleading error. That's not a question the constitution cares about. It's just a question of what the rules say about making that kind of substitution. All right. Well, I guess we'll end it there. We certainly got our money's worth. So thank you very well argued and very well briefed. We will reserve decision and we'll move to the next argument on the calendar. Thank you. Thanks very much.